UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:

**CONTEST PROMOTIONS-NY LLC,**

                     Debtor.

---------------------------------------------------------------x

Chapter 11

Case No. 11-14652 (JMP)

**INTERIM ORDER PURSUANT TO SECTIONS 105(a), 361,
362 AND 363 OF THE BANKRUPTCY CODE AND FED.R.
BANKR.P. 4001(b) AUTHORIZING DEBTOR TO USE
CASH COLLATERAL TOGETHER WITH RELATED RELIEF**

Contest Promotions-NY LLC, the debtor and debtor-in-possession ("Contest Promotions" or the "Debtor"), having moved the Court (the "Motion")[1] for orders pursuant to sections 105(a), 361, 362 and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Fed.R.Bankr.P. 4001(b) (the "Guidelines"):

      a.      Authorizing, on an emergency basis pursuant to the terms of an emergency order ("Emergency Order"), immediate use, in the ordinary course of business, of any and all income, receivables, proceeds received from or on account of its pre-petition or post-petition business operations, and all other cash equivalents constituting Cash Collateral within the meaning of section 363(a) of the Bankruptcy Code, including without limitation, proceeds, products, offspring, rents, or profits of such property, pending the interim hearing on this matter to avoid immediate irreparable harm;

      b.      Scheduling, pursuant to Bankruptcy Rule 4001(b), an interim hearing (the "Interim Hearing") on the motion ("Motion") for this Court to consider entry of an

---

[1] All terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

interim order in substantially the form of the Interim Order (the "Interim Order"), authorizing the Debtor to utilize Cash Collateral;

    c. Scheduling, pursuant to Bankruptcy Rule 4001(b), a final hearing (the "Final Hearing") on the Motion for this Court to consider entry of a final order in substantially the form of the Interim Order (the "Final Order", and together with the Interim Order, the "Cash Collateral Orders"), authorizing the Debtor to utilize Cash Collateral;

    d. Granting adequate protection to RJPG-2011 LLC (the "Lender") in the form of Replacement Liens, an Adequate Protection Claim and Adequate Protection Payments (all as defined herein); and

    e. Granting such related relief as this Court may deem just and proper; and

    f. Pursuant to Bankruptcy Rule 4001(c)(1), finding that notice of the Interim Hearing, given to (i) the Lender, (ii) the official committee of unsecured creditors (the "Committee") (or its counsel), if one is appointed, if not, the twenty (20) largest unsecured creditors of the Debtor; (iii) all known creditors who have or assert a lien against the Debtor's assets; (iv) the Internal Revenue Service; (v) the City of new York; (vi) all state and local taxing authorities in the locations where the Debtor conducts business; (vii) the United States Attorney for the Southern District of New York; (viii) the Office of the United States Trustee; and (xi) all parties having filed a notice of appearance in this case (collectively, the "Notice Parties"), was good and sufficient under the particular circumstances.

  The Interim Hearing having been held on October 5, 2011; and upon all of the pleadings filed with the Court and all of the proceedings held before the Court; and upon the record of the Interim Hearing; and it appearing that the relief requested in the Motion and granted on the terms

and conditions set forth in this Interim Order is in the best interests of the Debtor, its estate, and creditors and is necessary to avoid immediate and irreparable harm to the Debtor and its estate; and after due deliberation and consideration, and sufficient cause appearing therefor; and

**Now, upon the full record of this case including, without limitation, the Motion and the record of the Interim Hearing; and after due deliberation, and good and sufficient cause appearing therefor, the Court finds as follows:**

A. <u>Petition</u>. The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 3, 2011 ("<u>Petition Date</u>"). The Debtor has continued in the management and operation of its business and assets as a debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has been appointed in the case.

B. <u>Jurisdiction and Venue</u>. The Court has jurisdiction over the Chapter 11 case, the parties, and the Debtor's properties pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D). Venue of the Chapter 11 case and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

**The Court is satisfied with the following representations (the "Debtor Representations") by the Debtor:**

C. <u>Pre-Petition Loan Agreement</u>. The Debtor agrees and admits that (i) in December 2009, National Promotions Associates LLC ("<u>NPA</u>"), an affiliate of the Debtor, entered into a loan and obtained other financial accommodations from Manufacturers and Traders Trust Company ("<u>M&T Bank</u>") to and for the benefit of itself and the Debtor; (ii) the obligations to M&T Bank were evidenced by, among other things, a Credit Agreement, dated as December 23, 2009, a $3 million term note and a general security agreement (collectively, the "<u>Pre-Petition Loan Agreement</u>"); (iii) repayment under the

3

Pre-Petition Loan Agreement was secured by substantially all of the assets of NPA, including inter alia, accounts, chattel paper, investment property, deposit accounts, documents, goods, equipment, general intangibles (including trademarks, service marks, trade names, patents, copyrights, licenses and franchises), instruments, inventory, money, letter of credit rights, causes of action (including tort claims) and other personal property and all proceeds and products of the foregoing; and (iv) pursuant to an Assumption Agreement between Contest Promotions, NPA and M&T Bank, dated February 3, 2011, the Debtor assumed the obligations under the Pre-Petition Loan Agreement and granted liens in its assets to secure the obligations thereunder (collectively, the "Pre-Petition Collateral").

D. Assignment of Pre-Petition Loan Agreement to Lender. The Debtor alleges that (i) prepetition, RJPG-2011 LLC (the "Lender") acquired, by assignment, the Pre-Petition Loan Agreement from M&T by a certain Assignment of Loan Documents, dated as of July 29, 2011 from M&T Bank to the Lender; and (ii) pursuant to the foregoing assignment, the Lender acquired all right, title and interest in and to the Pre-Petition Loan Agreement.

E. The Pre-Petition Indebtedness. The Debtor agrees and admits that (i) the Lender has asserted a secured claim against the Debtor in the amount of $2 million, exclusive of certain interest, fees and charges (collectively the "Pre-Petition Indebtedness"); and (ii) all cash in the Debtor's possession or in which the Debtor has an interest on and after the Petition Date, together with all proceeds thereof, constitutes Cash Collateral in which the Lender has an interest within the meaning of section 363(a) of the Bankruptcy Code.

F. Good Cause. Use of Cash Collateral is vital to the Debtor's estate and its creditors, so that it can continue to operate its business in the ordinary course. The Debtor's

4

estate will be immediately and irreparably harmed if this Interim Order is not entered. Good cause has, therefore, been shown for the interim relief sought in the Motion.

       G.      <u>Good Faith.</u>  The terms of the facility for use of Cash Collateral has been negotiated in good faith and at arm's length between the Debtor on the one hand, and the Lender, on the other.

**Based upon the foregoing, it is hereby ORDERED, ADJUDGED AND DECREED as follows:**[2]

       1.      <u>Record; Findings</u>.  The record in the case, as well as the Debtor Representations, findings of fact and conclusions of law set forth above, are incorporated herein by this reference.

       2.      <u>Motion Granted</u>.  The Motion is granted on an interim basis.  Subject to the terms hereof, this Interim Order is valid immediately and is fully effective upon its entry.  The terms of this Interim Order and authority to use Cash Collateral hereunder shall expire on the date of the Final Hearing, unless this Court enters a further order approving a further use of Cash Collateral. Each factual finding and conclusion of law set forth herein and the Court's acceptance of the Debtor Representations shall be limited to, and only effective to the extent of the use of Cash Collateral under this Interim Order.

       3.      <u>Purpose and Necessity of Cash Collateral</u>.  The Debtor requires use of Cash Collateral as described in the Motion for general corporate purposes, and costs and expenses related to the Chapter 11 case subject to and solely for the purposes identified in, and to the extent allowed by, the Budget (as defined herein) during the pendency of this case.

---

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

4. <u>Use of Cash Collateral</u>.  The Debtor submits that the combination of the Replacement Liens, the Adequate Protection Claim, the Adequate Protection Payments, and certain other provisions of this Order adequately protects the Lender for the use of Cash Collateral pursuant to section 361 of the Bankruptcy Code.  After considering all the alternatives, the Debtor has concluded in the exercise of its prudent business judgment that the proposed use of Cash Collateral represents the best means to continue the Debtor's operations in the Chapter 11 case.

5. <u>Authorization</u>.  Subject to the terms and conditions of this Interim Order on an interim basis and pending the Final Hearing, the Debtor may use Cash Collateral to pay ordinary and necessary business expenses as set forth on the Budget (as annexed as Exhibit A to the Motion and incorporated herein by reference); <u>provided</u>, <u>however</u>, that the Debtor may use Cash Collateral (a) with respect to any given line item in the Budget, in an amount not to exceed 10% in excess of the amount originally identified on the Budget, and (b) with respect to total weekly disbursements set forth in the Budget, in an amount not to exceed 10% in excess of the amount originally identified as disbursements for the Budget for any one week period.  In addition, if and to the extent an expense ultimately falls due in a different week than that for which it had been anticipated in the Budget, the Debtor shall be entitled to use Cash Collateral to pay a permitted expenditure not paid during a budgeted week within two (2) weeks following the week scheduled for the payment of such budgeted item.  Notwithstanding anything in this paragraph 7, the Debtor and the Lender may modify the Budget without the need of further notice and hearing or Order of this Court, on reasonable notice to any committee appointed in this Chapter 11 case, and the United States Trustee.

6. <u>Grant of Replacement Liens.</u>  Pursuant to section 361 of the Bankruptcy Code, as adequate protection for the Debtor's use or sale of the Cash Collateral, the Lender is granted valid and perfected replacement security interests in, and liens (the "<u>Replacement Liens</u>") on all assets and other property acquired and/or created by any Debtor from and after the Petition Date (the "<u>Post-Petition Collateral</u>").  The Replacement Liens shall be (a) a first priority perfected lien on all of the Post-Petition Collateral that is not otherwise encumbered by a validly perfected, non-avoidable security interest or lien as of the Petition Date, (b) a first priority, senior and perfected lien on (i) that portion of the Post-Petition Collateral that comprises the Pre-Petition Collateral and is not subject to a validly perfected lien or security interest with priority over the Lender's liens on the Pre-Petition Collateral as of the Petition Date and (ii) Post-Petition Collateral subject to a lien that is junior to the liens securing the Pre-Petition Indebtedness, and (c) a second priority, junior perfected lien on all Post-Petition Collateral that is subject to a validly perfected lien with priority over the Lender's liens as of the Petition Date, <u>provided</u>, <u>however</u>, that the Replacement Liens shall (x) be subject and subordinate to the Carve-Out (as defined herein), and (y) not include claims and causes of action under §§ 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code or the proceeds thereof (the "<u>Avoidance Actions</u>").

7. <u>Grant of Adequate Protection Claim</u>.  In addition to the Replacement Liens granted pursuant to this Interim Order, the Lender is hereby granted an allowed administrative expense claim to the extent of any diminution in value of the Pre-Petition Collateral, with priority over all administrative expense claims and unsecured claims against the Debtor, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 1113 and 1114 (the

"Adequate Protection Claim"), provided, however, that the Adequate Protection Claim shall be subject to the Carve-Out and shall not extend to any Avoidance Actions.

8. Adequate Protection Payments. Pursuant to section 361(1) of the Bankruptcy Code, as adequate protection for the Debtor's use or sale of the Pre-Petition Collateral, the Debtor shall be required to pay the Lender monthly interest in the amount of 6.25% on outstanding principal (equal to $10,402.00 provided principal is unchanged) arising under, and in accordance with, the Pre-Petition Loan Agreement, as set forth more fully in the Budget, pending the Debtor's continued use of Cash Collateral hereunder (the "Adequate Protection Payments").

9. Validity and Enforceability of Pre-Petition Loan Agreement. In consenting to the continued use of Cash Collateral hereunder, the Debtor and the Lender stipulate and agree that (a) the Pre-Petition Loan Agreement is in all respects, a valid and binding agreement and obligation of the Debtor; (b) as of the Petition Date, the balance due and owing under the Pre-Petition Loan Agreement is $2 million, exclusive of certain interest, fees and charges, in accordance with the Pre-Petition Loan Agreement; and (c) the Debtor acknowledges and agrees that the liens and security interests held by the Lender with respect to the Pre-Petition Loan Agreement are valid, enforceable, properly perfected and non-avoidable. The stipulations set forth in this decretal paragraph shall be binding on the Debtor and any of its successors-in-interest and assigns, but are subject to the provisions contained in the next paragraph below.

10. Investigation Period. Notwithstanding anything herein to the contrary, with respect to perfection and enforceability of the Lender's liens and security interests and the obligations arising under the Pre-Petition Loan Agreement, or to assertion of any other claims or causes of action against the Lender: (a) an official committee of unsecured creditors, if any (the

"Committee"), appointed under section 1102 of the Bankruptcy Code, shall have ninety (90) days (or such longer period as the Committee may obtain for cause shown before the expiration of such period) from the date of the order approving the appointment of counsel for the Committee to investigate the facts and bring any appropriate proceedings as representative of the estate; or (b) if no Committee is appointed, any party in interest (the "Interested Party") has one hundred twenty (120) days (or a longer period for cause shown before the expiration of such period) from the entry of the Interim Order to investigate the facts and file a motion seeking authority to bring any appropriate proceedings as representative of the estate (either (a) or (b), as appropriate the "Investigation Termination Date"). If the Committee or the Interested Party determines that there may be a challenge to the validity, enforceability, perfection or priority of the liens securing the Pre-Petition Indebtedness or any other cause of action against and/or with respect to the Pre-Petition Indebtedness, the pre-petition liens securing such Pre-Petition Indebtedness or the Lender (collectively, a "Challenge Claim"), such Challenge Claim must be asserted (by complaint or motion, as appropriate) by the Investigation Termination Date. If such Challenge Claim is not filed on or before the Investigation Termination Date (or such other later date as extended by the written consent of the Debtor and the Lender), the stipulations and provisions contained in the preceding paragraph of this Interim Order and any consideration granted as adequate protection hereunder in this Interim Order shall be irrevocably binding on all parties in interest without further action by any party or this Court. Unless the Lender and the Debtor each consent in writing to an extension, the Investigation Termination Date may not be extended, unless cause therefor is shown and only after notice to the Lender and the Debtor and the filing of a motion and scheduling of a hearing date before the expiration of the Investigation Termination Date.

11. <u>Reporting Requirements</u>.  The Debtor shall furnish to the Lender all financial information and reports prepared by the Debtor, as required by the Bankruptcy Court or by the Operating Guidelines and Reporting Requirements of the U. S. Trustee's Office.

12. <u>Carve-Out</u>.  Notwithstanding anything herein, the Replacement Liens and Adequate Protection Claim shall be subject and subordinate only to a carve out equal to:

    a) amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and 31 U.S.C. § 3717;

    b) fees and expenses of attorneys, accountants, and other professionals retained in the Chapter 11 case by the Debtor in the amounts set forth in the Budget, to the extent allowed by the Bankruptcy Court, <u>provided</u>, <u>however</u>, in the event of an occurrence of an Termination Event (as defined herein) and from and after the date of such Termination Event, the fees and expenses of Debtor's professionals shall not exceed $125,000, to the extent allowed by the Bankruptcy Court;

    c) fees and expenses of attorneys, accountants, and other professionals retained in the Chapter 11 case by any Committee appointed in the case in the amount not to exceed $25,000 to the extent allowed by the Bankruptcy Court; and (d) reasonable fees and expenses of any Chapter 7 trustee, allowable pursuant to section 726(b) of the Bankruptcy Code in an amount not to exceed $20,000 (collectively, subsections (a), (b) (c) and (d) hereof, the "<u>Carve-Out</u>"), <u>provided</u>, <u>however</u>, that the Replacement Liens and the Adequate Protection Claim shall not be subject or subordinate to any expenses or fees of any party incurred in connection with the assertion and/or prosecution of, or joinder in, a Challenge Claim and/or any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar

relief: (A) commencing or prosecuting any action asserting claims pursuant to sections 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code or other cause of action (whether arising under state law, the Bankruptcy Code or other federal law), against the Lender (i) with respect to invalidating, setting aside, avoiding or subordinating, in whole or in part, the Pre-Petition Loan Agreement or (ii) preventing, hindering or delaying (whether directly or indirectly) the assertion or enforcement of Lender's right under this Interim Order. Notwithstanding anything to contrary herein, the Carve-Out funds allocable to the Committee may be used to undertake an investigation of the facts relating to a potential Challenge Claim with regard to the prepetition liens and claims of the Lender, in accordance with Local Rule 4001-2(f) of the Bankruptcy Court.

13. <u>Termination of Use of Cash Collateral</u>.  Use of Cash Collateral shall terminate upon the date of the occurrence of or, in some instances, after 5 days' notice of, certain events of default (a "<u>Termination Event</u>").  Automatic Termination Events include: (a) the date that is 180 days following the Petition Date, subject to further extension between the Debtor and the Lender; (b) the date that is 45 days after the Petition Date if the Final Order has not been entered by such date; and (c) the date that the Interim Order or the Final Order (when applicable) ceases to be in full force and effect or is stayed in any respect.  Termination Events subject to a 5-day notice period include: (a) the Debtor's failing to make a payment when required by the Interim Order; (b) the Debtor's making disbursements in excess of those set forth in the Budget and the permitted deviations allowable under the Interim Order; (c) the Debtor's failing to comply with the reporting requirements under the Interim Order; (d) the then applicable Budget expiring without a new proposed Budget having been agreed to by the Lender; and (e) the filing of a Challenge Claim.

14. <u>Remedies upon Termination</u>.  On the occurrence of a Termination Event, (a) the Debtor's right to use the Cash Collateral shall terminate automatically and (b) any unpaid Adequate Protection Payments shall automatically become immediately due and payable, (c) upon 7 business days' written notice to the Debtor (with a copy to counsel for the Committee and the Office of the United States Trustee (the "<u>United States Trustee</u>")), the Lender may seek an Order of the Court authorizing the Lender to (i) setoff amounts in any account of the Debtor maintained with the Lender and (ii) exercise the rights and remedies available under the Interim Order or applicable law, including foreclosing upon and selling all or a portion of the Pre-Petition Collateral or Post-Petition Collateral.  The actions described in subparagraph (c) (i) and (ii) above may be taken without further order or application to the Bankruptcy Court as the Lender shall, in its discretion, elect, and the automatic stay is hereby deemed modified and vacated to the extent necessary to permit such actions, so long as no order (x) prohibiting such action or (y) authorizing use of Cash Collateral (whether interim or final), is entered by this Court during the above-referenced seven business day period.

15. <u>No Waiver</u>.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Lender may have to bring or be heard on any matter brought before this Court.

16. <u>Additional Perfection Measures</u>.  The Replacement Lien shall be perfected by operation of law upon entry of this Interim Order by the Bankruptcy Court.  The Lender shall not be required to enter into or to obtain landlord waivers, mortgagee waivers, bailee waivers or warehouseman waivers or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including trademark, copyright, trade name or patent assignment filings with the United States Patent and

Trademark Office, Copyright Office or any similar agency with respect to intellectual property), or obtain consents from any licensor or similarly situated party in interest, or take any other action in order to validate and to perfect the Replacement Liens.  If the Lender, in its sole discretion, chooses to obtain consents from any licensor or similarly situated party in interest, to file financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such security interests and liens, (a) all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order and (b) no defect in any such act shall affect or impair the validity, perfection or enforceability of the liens granted hereunder.  In lieu of obtaining such consents or filing such financing statements, notices of lien or similar instruments, the Lender may, at its sole discretion, choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of collateral subject to the Replacement Liens located within the geographic area covered by such place of filing, and such filing by the Lender shall have the same effect as if such financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

17. <u>Final Hearing</u>.  The Final Hearing shall be heard before this Court on October 26, 2011 at 10:00 a.m. at the United States Bankruptcy Court, One Bowling Green, New York, New York 10004-1408.

18. <u>Adequate Notice</u>.  The notice of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court.  Under the circumstances, no further notice of the request for the relief granted at the Interim Hearing is required.  The Debtor shall serve a copy of this Interim Order upon the Notice Parties by regular mail on or before October 10, 2011.  Responses or objections, if any, to the relief to be sought at

the Final Hearing must conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with a hard-copy delivered directly to Chambers), and be served in accordance with General Order M-242 and served upon: (a) Halperin Battaglia Raicht, LLP, proposed attorneys for the Debtor, 555 Madison Avenue, 9th Floor, New York, New York 10022, Attn:  Alan D. Halperin, Esq. and Robert D. Raicht, Esq.; (b) Schiff Hardin LLP, attorneys for the Lender, 666 Fifth Avenue, New York, NY 10103, Attn: Thomas P. Battistoni, Esq. and Louis T. DeLucia, Esq.; and (c) the Office of the United States Trustee, 33 Whitehall Street, New York  10004, so as to be actually received no later than 5:00 p.m. on October 21, 2011.

Dated: New York, New York
October 5, 2011

*s/ James M. Peck*
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE